IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| GULF RESTORATION NETWORK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:15-cv-0191-CB-C |
| | § | |
| SALLY JEWELL, Secretary of the Interior, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT N. GUNTER GUY, JR.'S
NOTICE OF COMPLIANCE AND
MOTION TO CONFIRM THE DISSOLUTION OF THE INJUNCTION,
OR IN THE ALTERNATIVE, MOTION TO DISSOLVE INJUNCTION**

Comes now, Defendant N. Gunter Guy, Jr., in his capacity as the Commissioner of the Alabama Department of Conservation and Natural Resources, and, pursuant to Rule 60 of the Federal Rules of Civil Procedure and Civil Local Rule 7, respectfully requests this Court to confirm that the injunction entered by this Court on February 16, 2016 dissolved by its own terms or, in the alternative, to dissolve the injunction. Defendant Guy also hereby provides notice of compliance with the terms of this Court's Final Judgment of February 16, 2016. In furtherance of this notice of compliance and in support of the relief requested herein, Defendant Guy provides the information and arguments below along with the following supporting documents attached hereto as Exhibits 1 – 4:

Exhibit 1:    Final Restoration Plan I and Environmental Impact Statement: Provide and Enhance Recreational Opportunities
(http://www.gulfspillrestoration.noaa.gov/sites/default/files/DWH%20Oil%20Spill%20AL%20TIG%20Final%20Restoration%20Plan%20I%20and%20EIS%20Provide%20and%20Enhance%20Recreational%20Opportunities.pdf)

1

Exhibit 2:     Record of Decision, dated May 16, 2017
(http://www.gulfspillrestoration.noaa.gov/sites/default/files/AL%20RP%2
0I%20Signed%20ROD%2005.16.17%20.pdf)

Exhibit 3:     Gulf State Park Master Plan
(http://mygulfstatepark.com/wp-
content/uploads/2017/02/160823_GSP_MasterPlan_Final_lowres.pdf)

Exhibit 4:     Draft Restoration Plan I and Environmental Impact Statement:  Provide
and Enhance Recreational Opportunities
(http://www.gulfspillrestoration.noaa.gov/sites/default/files/DWH%20Oil
%20Spill%20AL%20TIG%20Draft%20Restoration%20Plan%20I%20and
%20EIS_Provide%20and%20Enhance%20Recreational%20Opportunities.
pdf)

As Commissioner of the Alabama Department of Conservation and Natural Resources, Defendant Guy has a duty, to the extent possible, to prevent losses to the public access and amenities at the State Parks, including Gulf State Park.  Also, as the Lead Natural Resource Trustee for the State of Alabama, Defendant Guy has the duty, to the extent possible, to maximize the benefits of restoration projects in Alabama.  Thus, this motion has been filed as early as possible in an attempt to minimize any negative impacts or loss of benefits.

## BACKGROUND

The Plaintiff, Gulf Restoration Network ("GRN"), originally filed this action in October 2014 to challenge a portion of a restoration project approved in a 2014 Record of Decision ("2014 ROD") issued by the Trustees for the *Deepwater Horizon* oil spill.  The 2014 ROD approved the Phase III Early Restoration Plan and Early Restoration Programmatic Environmental Impact Statement ("Phase III ERP/PEIS").  One of the 44 projects in this plan was the Gulf State Park Enhancement Project.  This project had 5 elements, all to be implemented at Gulf State Park: (1) rebuilding the lodge and conference center, (2) interpretive center, (3) research and education center, (4) trails and other visitor enhancements, and (5) dune restoration.  GRN challenged the decision of the Trustees to approve the use of natural resource damage assessment ("NRD" or

2

"NRDA") funds for the lodge and conference center component of this project on various grounds. (*See* Second Amended Complaint, Doc. 34).   After the parties exchanged cross-motions for summary judgment, this Court granted summary judgment in favor of the defendants on all causes of action except for the issue of whether the Trustees had conducted an appropriate analysis of alternatives to the Gulf State Park Enhancement Project[1]. (Opinion and Order, Doc. 64).  The Court found that the Trustees had unreasonably limited their analysis of alternatives to only the project alternative and the no action alternative. (*Id.*).  The Court enjoined the expenditure of "any of the $58.5 million in early restoration funds for use in the development or construction of the Gulf State Park lodge and conference center until such time as the Trustees comply with the alternatives analysis requirements of OPA and NEPA." (Final Judgment, Doc. 65).

## CLARIFICATION OF PROJECT NAMES AND DESCRIPTIONS

For clarification purposes, the following project names and descriptions are provided for the Court:

**"Gulf State Park Project"** – The Gulf State Park Project refers to the project plan for the entire Gulf State Park as outlined in the Gulf State Park Master Plan ("GSP Master Plan") (see Exhibit 3).  The Gulf State Park Project includes both the lodge and conference center as well as all of the other park amenities discussed in the GSP Master Plan.

**"Gulf State Park Enhancement Project"** – The Gulf State Park Enhancement Project refers to the Phase III Early Restoration project that was the subject of GRN's complaint in this case.  That project was part of the Phase III ERP/PEIS and approved by the 2014 ROD.  As stated

---

[1] While the Gulf State Park Enhancement Project includes 4 other elements besides the lodge and conference center component, the Court only enjoined the use of funds for the lodge and conference center. (Final Judgment, Doc. 65).  GRN specifically stated that it was not challenging the remaining 4 elements of the project. (Memorandum in Support of Plaintiff's Mot. for Summ. J., Doc. 34, p. 8).

above, the Gulf State Park Enhancement Project included partial funding for the lodge and conference center along with full funding for 4 additional elements: interpretive center, research and education center, trails and other visitor enhancements, and dune restoration.

**"Gulf State Park Lodge and Associated Public Access Amenities Project"** – The Gulf State Park Lodge and Associated Public Access Amenities Project refers to the project recently approved for implementation by the Alabama Trustee Implementation Group ("Alabama TIG") in the Final Restoration Plan I and Environmental Impact Statement: Provide and Enhance Recreational Opportunities ("RP/EIS") and the subsequent Record of Decision dated May 16, 2017 ("2017 ROD"). This project includes partial funding for the lodge and full funding for various other public access amenities including an interpretive lobby, public educational programs, public restrooms and post-beach showers, public beach access from the lodge area, a tram system for access to the remainder of the park, a pedestrian path from the neighboring fishing pier, bicycle share stations/program, and a public viewing area. (RP/EIS, Sec. 2.2.1). This project does not include any funding for the conference center.

## FACTS

Since this Court entered its injunction on February 16, 2016, the factual conditions surrounding this project and the development of the NRDA process for the *Deepwater Horizon* oil spill in general have changed dramatically through the occurrence of multiple major events. The first two events actually occurred prior to the issuance of the injunction, but since they occurred after the 2014 ROD on which the original suit was based, they were not part of the administrative record considered by the Court. Each of these events is described chronologically below.

4

**December 2014**:        **Market feasibility study is completed.**

The "Gulf State Park Lodge Facilities Market Feasibility Study" was completed in December 2014 by Pinkowski & Company. (RP/EIS, Appendix G – Market Feasibility Study). The study determined that a market existed for a 350-room lodge to be built at Gulf State Park. (*Id.*, p. 11).  The study further determined that the lodge operations would generate approximately $5.7 million in net revenues in its first year of operations. (*Id.*, p. 58).   The completion of the market feasibility study also satisfied the requirements of Alabama Code § 9-14E-3.

**October 2015**:        **Gulf Coast States reached a settlement of their economic damages claims with BP and additional BP grant money is allocated to Gulf State Park.**

Separate and apart from NRD claims and funding, in October 2015, the Gulf Coast States, including Alabama, filed with the United States District Court for the Eastern District of Louisiana their "Settlement Agreement between the Gulf States and the BP Entities with Respect to Economic and Other Claims arising from the *Deepwater Horizon* Incident" ("Settlement Agreement"). (*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, Case 2:10-md-02179-CJB-SS, (Doc.15435-2)).  Of the total funds to be received by the State of Alabama through this settlement, $50 million was designated for the construction of the lodge and conference center at Gulf State Park. (Settlement Agreement, p. 23; *see also* State of Alabama Office of the Attorney General Press Release, "Attorney General Luther Strange Announces Details of Alabama's Settlement with BP over 2010 Gulf Oil Spill," dated October 5, 2015, http://ago.state.al.us/News-724).  In addition, $5 million of BP grant money was awarded to the Gulf State Park project. (RP/EIS, Appendix F, Memorandum Regarding GSP Project Plan and Funding, p. 2).  When combined with the NRD funds, these funds represented the remaining funds

necessary to complete the Gulf State Park Project, including the completion of the lodge and conference center. (*Id.*, p. 3).

**March 2016:**         **DWH Trustees issue ROD adopting the PDARP/PEIS.**

In March 2016, the DWH Trustees issued their record of decision approving the Final Programmatic Damage Assessment and Restoration Plan and Final Programmatic Environmental Impact Statement for the spill.[2]   The PDARP/PEIS presented the Trustees' assessment of the injuries suffered as a result of the spill.   Notably, the Trustees determined that as a result of the spill, the public lost over 16 million user days of boating, fishing, and beach going experiences (Final PDARP/PEIS, Sec. 4.10).

The PDARP/PEIS also presented the Trustees' plans to restore for these injuries.   To restore these lost recreational use experiences, the Trustees developed the "Provide and Enhance Recreational Opportunities" Restoration Type. (*Id.*, Sec. 5.5.14).   The goals of this Restoration Type are to (1) "[i]ncrease recreational opportunities such as fishing, beach-going, camping, and boating with a combination of ecological restoration and creation of infrastructure, access, and use opportunities" and (2) "[u]se education and outreach to promote engagement in restoration and stewardship of natural resources, which could include education programs, social media, and print materials." (*Id.*, Sec. 5.5.14.1).

The PDARP/PEIS also modified the governance structure of the Trustees into Trustee Implementation Groups for each Restoration Area. (*Id.,* Sec. 7.2).   The Alabama Restoration Area is now governed by the Alabama Trustee Implementation Group ("Alabama TIG") which includes Trustees from Alabama, NOAA, DOI, EPA, and USDA. (*Id.*, Sec. 7.2.2).

---

[2] The Final PDARP/PEIS is an over 100 MB document that can be found at http://www.gulfspillrestoration.noaa.gov/restoration-planning/gulf-plan/ along with the Record of Decision (last accessed May 23, 2017).

**April 2016:**          **Court approves the settlement of the Trustees' NRD claims against BP.**

In April 2016, the United States Court for the Eastern District of Louisiana entered a Consent Decree approving the settlement of the Trustees' NRD claims against BP. (*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, Case 2:10-md-02179-CJB-SS (Doc. 16093) ("Consent Decree")). Pursuant to the terms of this Consent Decree, certain funds were allocated to each Restoration Type within a Restoration Area. The Alabama Restoration Area was allocated a total of $295,589,305. (Consent Decree, Appendix 2-2). Within the Alabama Restoration Area, a total of $110,505,305 was designated for use for the "Provide and Enhance Recreational Opportunities" Restoration Type.[3] (*Id.*, Appendix 2-8).

**July 2016:**          **Alabama TIG publishes Notice of Intent to prepare a restoration plan and environmental impact statement and to conduct public scoping.**

On July 6, 2016, the Alabama TIG published a Notice of Intent to prepare a restoration plan and environmental impact statement and requested input from the public on restoration projects to compensate for Alabama's recreational use injury for the "Provide and Enhance Recreational Opportunities" Restoration Type. (81 Fed. Reg. 44007). This restoration plan and environmental impact statement was developed to both fulfill the Trustees' responsibilities under this Court's order and to look more broadly at the potential to provide restoration for lost recreational shoreline use in Alabama by developing additional recreational use restoration projects. (81 Fed. Reg. 44007). During the scoping period, the Alabama TIG received 49 correspondence documents, each containing multiple comments. (RP/EIS, Sec. 1.7.1). The most

---

[3] The funding for each Restoration Area and Restoration Type includes Early Restoration funds that had already been allocated in Early Restoration. Here, the funds for the Alabama Restoration Area and the "Provide and Enhance Recreational Opportunities" Restoration Type include the $58.5 million enjoined by this Court. (Consent Decree, Appendix 2-8).

popular project recommendation was new or additional lodging. (RP/EIS, p. 1-16).

**August 2016**:        **Gulf State Park Master Plan is completed.**

As part of the continued planning and design of the Gulf State Park Project, the Gulf State Park Master Plan was completed in August 2016.  The GSP Master Plan was shaped by feedback from over 2,600 responses in an online survey, attendees at the multiple community open houses and mini-open houses, and stakeholders, officials, and park staff. (GSP Master Plan, p. I, 56).  The goal of the Master Plan is to "transform the park into an international benchmark of economic and environmental sustainability demonstrating best practices for outdoor recreation, education, and hospitable accommodations." (*Id.*).  The GSP Master Plan outlines three phases for accomplishing this goal.  Phase I is comprised of the original 5 elements of the Phase III Early Restoration Gulf State Park Enhancement Project and includes the lodge and conference center portions which were the subject of GRN's complaint in this matter. (*Id.*). Phase II includes conversion of State Park Road 2, additional trail enhancements, campground improvements, conversion of the golf course into a park adventure launch, and a public tram system. (*Id.*).  The public tram system has been incorporated as an element of the new Gulf State Park Lodge and Public Access Amenities Project. Phase III includes further trail enhancements, picnic area enhancements, beachfront parking improvements, and Lake Shelby North improvements. (*Id.*).

**December 2016**:        **Alabama TIG releases a Draft Restoration Plan and
                          Environmental Impact Statement**

On December 16, 2016, the Alabama TIG released its Draft Restoration Plan I and Environmental Impact Statement:  Provide and Enhance Recreational Opportunities ("Draft RP/EIS").  One of the six projects proposed for implementation in this plan was the Gulf State Park Lodge and Associated Public Access Amenities Project.  This project proposed partial funding for the lodge and included the addition of various public access amenities: an interpretive

8

lobby, public educational programs, public restrooms and post-beach showers, public beach access from the lodge area, a tram system for access to the remainder of the park, a pedestrian path from the neighboring fishing pier, bicycle share stations/program, and a public viewing area. (Draft RP/EIS, Sec. 2.2.1.1).  Funding for the conference center portion of the larger Gulf State Park Project was not included as part of the new Gulf State Park Lodge and Associated Public Access Amenities Project. (*Id.*)  Thus, while the Alabama TIG again approved funding for a portion of the lodge construction, it ultimately determined that it would not fund the construction of the associated conference center with NRD funds.  Instead, based on further project development, the focus of the project was shifted to providing additional public access and educational opportunities throughout Gulf State Park and, in particular, at the lodge site.  This newly envisioned project, which still provides for partial funding for the lodge at Gulf State Park, has been modeled after National Park lodges and designed to create a National Park-type of experience for the public. (RP/EIS, Sec. 1.5.2, 3.1.1).

The Alabama TIG received comments on this Draft RP/EIS between December 16, 2016 and January 30, 2017, both in writing and at two separate public meetings held in Gulf Shores and Dauphin Island. (RP/EIS, Sec. 1.7.2; Draft RP/EIS, Sec. 1.7.3).

**April 2017:**        **Alabama TIG releases a Final Restoration Plan and Environmental Impact Statement**

On April 14, 2017, the Alabama TIG released the Final Restoration Plan I and Environmental Impact Statement:  Provide and Enhance Recreational Opportunities ("RP/EIS"), a 439-page document, excluding appendices.  In the RP/EIS, the Alabama TIG outlined the process it followed to analyze the various project alternatives submitted for consideration.  Between July and December 2016, the Alabama TIG screened 474 potential projects from the DWH Trustee and Alabama project submission portals. (RP/EIS, Sec. 2.1.1).  These portals included all restoration

9

project proposals submitted for the Alabama Restoration Area, by the public and the Alabama TIG trustees, including those submittals received in response to the Alabama TIG's scoping invitation for the RP/EIS. (*Id.*) After an initial OPA eligibility screen, which included whether or not the project met the Alabama TIG's stated purpose and need of addressing the loss of recreational shoreline uses in Alabama, the Alabama TIG was left with 48 projects. (*Id.*) The Alabama TIG then removed duplicate projects, resulting in a list of 33 projects. (*Id.*, Sec. 2.1.3). Eight of these 33 projects were then removed from the list because they had already received funding. (*Id.*, Sec. 2.1.4). Of the remaining 25 projects, 8 were carried forward for additional analysis (which later became 9 because the Alabama TIG analyzed one of the projects with and without the acquisition of a particular parcel of land which was being considered for funding through another source). (*Id.*, Sec. 2.1.5, 2.1.6). The Alabama TIG's reasons for not carrying forward each of the remaining projects are outlined in Table 2-4 in the RP/EIS. (*Id.*, pp. 2-4 - 2-17).  In conducting its project screening and subsequent alternatives analysis, the Alabama TIG considered projects in each of the categories suggested by GRN in its Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. 46-1)[4] and cited by the Court in its Opinion and Order. (*See* RP/EIS, Appendix D, Project Eligibility Screening Determinations). In addition to projects for which recreation was the major objective, the Alabama TIG also considered restoration projects that were (1) ecological projects with substantial recreational benefits, and (2) projects that were primarily ecological. (*Id.*, Sec. 2.1.2.)

---

[4] In its Memorandum in Support of Plaintiff's Motion for Summary Judgment GRN listed several "reasonable alternatives" that it argued could have been analyzed by the Trustees in the Phase III Early Restoration Plan: "[p]urchase property for public access and conservation;" "[r]estore wetlands and shoreline;" "[b]uild habitat;" "[a]llow private entity to fund or partially fund lodge construction and apply funds to restoration;" and "[b]uild public education and trails component and forego lodge/conference center." (Doc. 46-1 at p. 14).

The RP/EIS contains a robust analysis of each of the nine project alternatives, including a "no action" alternative, under both OPA and NEPA. First, the Alabama TIG evaluated each restoration alternative under the OPA NRDA restoration planning criteria in 15 CFR § 990.54. (RP/EIS, Chapter 3).  Chapter 3 of the RP/EIS also contains the Alabama TIG's evaluation of the natural recovery alternative. (RP/EIS, Sec.3.10.) The Alabama TIG then evaluated each project alternative under NEPA, including re-examining and updating the original NEPA evaluation completed for the lodge in Phase III of Early Restoration. The Alabama TIG first identified the affected environment for the restoration alternatives. (RP/EIS, Ch. 4).  The Alabama TIG then evaluated the environmental consequences of each restoration alternative as required by NEPA, including the consideration of the cumulative impacts and indirect effects of each alternative on the environment. (RP/EIS, Ch. 5). The Alabama TIG summarized and compared the environmental consequences of each restoration alternative. (RP/EIS, Table 5-42).  Finally, the Alabama TIG reviewed each restoration alternative for compliance with relevant federal and state laws. (RP/EIS, Ch. 6).

After conducting these analyses, the Alabama TIG concluded that six preferred alternatives, including the Gulf State Park Lodge and Associated Public Access Amenities Project, best met the OPA evaluation criteria, the Trustees' goals and objectives for the "Restore and Enhance Lost Recreational Use" Restoration Type, and the specific purpose and need for the RP/EIS. (RP/EIS, Sec. 2.2.4).

The RP/EIS also responded to comments received on the Draft RP/EIS and included additional information regarding the Gulf State Park Lodge and Associated Public Access Amenities Project requested by the public. (See RP/EIS, Appendices E & F).  This additional information included details on the project budget and funding options, operation and maintenance

requirements for other public amenities at Gulf State Park that the lodge revenues would support, and an updated accounting of the funds spent on the Gulf State Park Project as a whole. (*See generally*, RP/EIS, Appendix E – Projected Annual Operating Costs for Gulf State Park Project Elements Supported by Lodge Revenues, and Appendix F – Memorandum Regarding Gulf State Park Project Plan and Funding).

<u>**May 2017**</u>:        **Alabama TIG issues ROD approving the new restoration plan and environmental impact statement.**

On May 16, 2017, the Alabama TIG issued its Record of Decision approving the Final Restoration Plan I and Environmental Impact Statement: Provide and Enhance Recreational Opportunities.  This 2017 ROD finalizes the selection by the Alabama TIG of the six preferred project alternatives, including the Gulf State Park Lodge and Associated Public Access Amenities Project.

## REQUEST FOR RELIEF

I.   **THE PARTIES HAVE SATISFIED THE CONDITIONS OF THE INJUNCTION ISSUED BY THIS COURT AND, THEREFORE, THE INJUNCTION HAS DISSOLVED BY ITS OWN TERMS.**

The Alabama TIG has satisfied the terms of the Court's February 16, 2016 Final Judgment, so the injunction should be considered dissolved by its own terms.  That judgment stated: "Both the Federal Trustees and the State Trustee are enjoined from expending any of the $58.5 million in early restoration funds for use in the development or construction of the Gulf State Park lodge and conference center until such time as the Trustees comply with the alternatives analysis requirements of OPA and NEPA." (Final Judgment, Doc. 65, p.2).  As explained in the chronology of events outlined above, the Alabama TIG has complied with this Court's order and conducted a new and robust analysis of project alternatives under both OPA and NEPA in the RP/EIS.  Thus, the injunction has dissolved by its own terms.

12

**II.     THE PARTIES ARE ENTITLED TO RELIEF FROM THIS COURT'S INJUNCTION BECAUSE ITS APPLICATION IS NO LONGER EQUITABLE.**

Even if the injunction did not dissolve by its own terms, the Alabama TIG has satisfied the plain language of the Court's Final Judgment by complying with the alternatives analysis requirements of OPA and NEPA in issuing the RP/EIS and 2017 ROD.  Thus, continued enforcement of the injunction is inequitable.

A party may obtain relief from a judgment or order under Rule 60(b)(5) of the Federal Rules of Civil Procedure if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).  Under this rule, a party may ask a court for relief from a judgment or order if "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal quotations omitted). Once the party seeking relief carries the burden of establishing that changed circumstances warrant relief, "a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Id.* (internal quotes and citation omitted).  This rule is to be construed liberally to prevent injustice. *Cook v. Birmingham News*, 618 F.2d 1149, 1153 (5th Cir. 1980).  "[A] court must never ignore significant changes in the law or circumstances underlying an injunction lest the decree be turned into an instrument of wrong." *Salazar v. Buono*, 559 U.S. 700, 714-15 (2010) (internal quotations and citation omitted).

Significant changes in factual conditions specifically with respect to the Gulf State Park lodge have occurred since this Court entered its injunction in February 2016.  Since that time, the remaining funding for the Gulf State Park Project, including the lodge, has been finalized and received and a master plan for the Gulf State Park Project has been completed.  Notably, the Gulf State Park Project has been further developed, designed, and budgeted, the lodge component has been updated as a new restoration project with additional public access amenities and without the

conference center, and, pursuant to this Court's order, has undergone additional evaluation under both OPA and NEPA. These changed facts render the continued enforcement of this Court's order detrimental to the public interest. The Alabama TIG has chosen the Gulf State Park Lodge and Associated Public Access Amenities Project, along with others, as a means of compensating the public for recreational use losses suffered as a result of the *Deepwater Horizon* oil spill. Continued enforcement of the injunction prevents the public from realizing the benefits of this project which has now undergone the additional OPA and NEPA analysis required by this Court.

A.    **Significant changes in factual conditions have occurred since this Court's February 16, 2016 order.**

As outlined in the chronology of events listed above, many significant changes in the factual conditions surrounding the enjoined project have occurred. First, and most significant, is the fact that Alabama TIG performed the robust alternatives analysis requested by the Court. Instead of simply supplementing the original analysis, the Alabama TIG conducted an entirely new scoping process, evaluated all 474 projects in the project submission portals for Alabama (some of which were submitted by the public and some of which were submitted by Trustees), developed an entirely new draft and final restoration plan and environmental impact statement, and issued a new ROD selecting 6 project alternatives, with one being a newly developed alternative that included partial funding for the lodge. *See Sierra Club v. U.S. Dep't of Agriculture*, 2013 WL 811672, at *17 (S.D. Ill. Mar. 5, 2013) (finding a significant change in factual circumstances where the agency did not simply supplement its original plan, but embarked on a new planning process, conducted a new environmental analysis, and selected a different alternative).

In its Opinion and Order (Doc. 64), the Court found that the Trustees unreasonably narrowed the analysis of alternatives to just two: the project alternative or the no action alternative. (Opinion and Order, Doc. 64, p. 15). The Court noted that GRN pointed to several additional

14

alternatives that could have been addressed: purchase property for public access and conservation, restore wetlands and shoreline, build habitat, allow a private entity to fund or partially fund the lodge construction and apply the funds to restoration, or build public education and trails component and forego the lodge and conference center. (*Id.* at 14). The Alabama TIG's evaluation process covered each of these suggested alternatives by GRN. (*See generally*, RP/EIS, Appendix D, Project Eligibility Screening Determinations). In the RP/EIS, the Alabama TIG analyzed in detail a total of 10 projects (including the no-action alternative) under both OPA and NEPA. (*Id.*, Ch. 2-4). The Alabama TIG also responded to all comments received on the draft RP/EIS and in the final RP/EIS provided additional, specific information requested by the public on the lodge itself and the Gulf State Park Project as a whole. (*Id.*, Sec. 1.8 and Appendices E & F). This entirely new restoration planning process is a significant factual change from the time the Court entered its Opinion and Order (Doc. 64).

Second, since the 2014 ROD was signed, both the Gulf State Park lodge and the entire Gulf State Park Project in general have undergone extensive planning, design, and development phases. During this process, the design of the lodge portion of the Gulf State Park Project was completed and construction even has begun. The lodge was re-evaluated as a potential element of a NRD project and the Alabama TIG took the opportunity to change the nature and scope of the project, adding additional public access amenities to the project and removing the conference center from funding consideration, resulting in the Gulf State Park Lodge and Associated Public Access Amenities Project. Thus, the Gulf State Park Lodge and Associated Public Access Amenities Project approved in the RP/EIS is a different project than the Gulf State Park Enhancement Project approved in the Phase III ERP/PEIS and the subject of this original litigation.

Third, the State of Alabama received the remaining funding needed to complete both the lodge and conference center at Gulf State Park as a result of its economic damages settlement agreement with BP and the additional receipt of BP grant funds.[5]  One of the concerns expressed in the Court's Opinion and Order was that "[t]he Trustees and BP agreed to take $58.5 million dollars ($117 million total with NRD offsets) out of the 'pot' of funds available for early restoration with the intention of setting those funds aside for possible use in a project that, at the time, was little more than an idea and could not come to fruition for many years, if at all."[6] (Opinion and Order, Doc. 64, p. 16). This concern should now be alleviated because these funds, with the addition of the NRD funds approved in the RP/EIS, are sufficient to complete the fully planned and designed lodge. (RP/EIS, Appendix F – Memorandum Regarding GSP Project Plan and Funding, pp. F-1 – F-2).

Fourth, the PDARP/PEIS and the Consent Decree entered by the Court obligate the Alabama TIG to use funds for the Provide and Enhance Recreational Opportunities Restoration Type.  The Gulf State Park Lodge and Associated Public Access Amenities Project falls within this Restoration Type and satisfies part of this obligation.

These significant changes surrounding the planning, design, development, funding, and analysis of the lodge at Gulf State Park warrant relief from this Court's Final Judgment.

**B.**     **In light of significant factual changes, including the new restoration plan and environmental impact statement, continued enforcement of the Court's original injunction is detrimental to the public interest.**

---

[5] Although these funds were received prior to the Court's February 16, 2016 ruling, they were received after the issuance of the 2014 ROD which was the basis for GRN's claims and, therefore, this fact was not considered by the Court.

[6] The offsets referenced in the Court's Opinion and Order are no longer relevant since the effects of the offsets were voided by the Consent Decree. (Consent Decree, p. 21) (voiding the Framework Agreement and Project Stipulations which called for offsets).

Continued enforcement of the Court's injunction in light of the factual changes discussed above is detrimental to the public interest.  Allowing the injunction to remain in effect will adversely affect the public's compensation for recreational use losses suffered as a result of the spill.  "The public interest is a particularly significant reason for applying a flexible modification standard where, as here, the injunction reaches beyond the parties involved directly in the suit." *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1118 (D.C. Cir. 2017) (quotations and citations omitted).  The purpose of Gulf State Park Lodge and Public Access Amenities Project is to compensate the public for lost recreational shoreline use in Alabama. (RP/EIS, Sec. 2.2.1.) It has been designed to increase and enhance the public's use and enjoyment of the Alabama shoreline by providing overnight accommodations and various public access amenities throughout Gulf State Park. (*Id.*) The Alabama TIG has determined that this project meets the purpose and need stated in the RP/EIS for compensating the public for lost recreational shoreline use as a result of the oil spill and that it is compliant with both OPA and NEPA. (*Id.*, Sec. 2.2.4).  Allowing the injunction to remain in effect would delay the public's compensation for recreational use losses suffered as a result of the spill since the Alabama TIG would have to develop a new restoration plan and environmental impact statement with a new project or projects to fulfill its responsibilities as Trustees under OPA, the Consent Decree, and the PDARP/PEIS for the Provide and Enhance Recreational Opportunities Restoration Type.

The State could have designed this project to be the "hotel and convention center" that GRN claimed it to be in its Second Amended Complaint.  The State could have had the goal of generating "top dollar" for the revenues produced by an exclusive "hotel and convention center" and could have used a private financing structure to accomplish this goal.  Instead, however, this project was developed to provide lodging and general access to the public as a whole to compensate

the public for the shoreline visits lost during and as a result of the oil spill, and, importantly, to be a debt-free facility. The lodge rooms will provide on-site, overnight access to the beach at Gulf State Park, allowing the public a new way to experience this unique resource. (RP/EIS, Sec. 2.2.1, p. 2-21, Sec. 3.1.2, p. 3-7). The revenues generated by the lodge will fund not only the additional public access amenities developed for this project, but would support other Gulf State Park facilities and activities as well. (RP/EIS, Sec. 2.2.1, p. 2-23). This level of public access and park-wide support is only available if NRD funds are used to complete the project in a timely manner. (*See* RP/EIS, Appendix F – Memorandum Regarding GSP Project Plan and Funding, pp. 4-6).

## CONCLUSION

The significant events occurring after this Court's Final Judgment in February 2016 render the continued enforcement of that judgment inequitable. The Alabama TIG has complied with the terms of that order, not by simply analyzing additional project alternatives, but conducting an entirely new scoping process and requesting additional project submissions, re-evaluating the lodge as a component to a NRD-funded project and changing the project based on that evaluation, analyzing the new project under OPA and NEPA, itself and comparatively with other projects, and providing additional information to the public about the project. Continuing the enforcement of the injunction would be detrimental to the public interest, both in terms of a delay in realization of restoration benefits and as a reduction in public access at Gulf State Park. Defendant Guy respectfully requests this Court to either recognize the Final Judgement dissolved by its own terms or, in the alternative, to dissolve the injunction entered by the Final Judgment.

*/s/  Jane L. Calamusa*
JANE L. CALAMUSA (CALAJ5640)
Attorney for Defendant N. Gunter Guy, Jr., in
his capacity as the Commissioner of the
Alabama Department of Conservation and
Natural Resources

Of Counsel:
Rosen Harwood, P.A.
Post Office Box 2727 (35403)
2200 Jack Warner Parkway, Suite 200
Tuscaloosa, Alabama 35401
Telephone:     (205) 344-5000
Facsimile:      (205) 758-8358

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2017, the foregoing has been served by the

court's electronic filing system, electronic mail and/or United States Mail, postage prepaid, to the

following counsel of record:

Robert B. Wiygul
Waltzer, Wiygul & Garside, LLC
1011 Iberville Dr.
Ocean Springs, Mississippi  39564

Michael L. Brown
Waltzer Wiygul & Garside, LLC
1000 Behrman Highway
Gretna, Louisiana  70056
*Attorneys for Plaintiff Gulf Restoration Network*

Kristofor R. Swanson
Marissa Piropato
Natural Resources Section
Environment & Natural Resources Div.
U.S. Department of Justice
Ben Franklin Station, P. O. Box 7611
Washington, D.C.  20044-7611
*Attorneys for Federal Defendants*

*/s/ Jane L. Calamusa*
Of Counsel